## In re STRAUCH.

(District Court, N. D. Ohio, E. D.    March 17, 1913.)

### No. 3,868.

1. BANKRUPTCY (§ 267*)—SALE OF MORTGAGED REAL ESTATE FREE FROM LIENS —WIFE'S RIGHT OF DOWER.

Under the law of Ohio by which a wife by joining in a mortgage of her husband's real estate releases her right of dower only to the mortgagee and his assigns, where real estate of a bankrupt was sold free from the liens of mortgages thereon and the contingent right of dower of his wife, the wife is entitled to the full value of her dower interest from any surplus remaining after payment of the mortgage debts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. § 267.*] .

2. BANKRUPTCY (§ 396*)—EXEMPTIONS.

The value of personal property exemptions allowed to a bankrupt cannot be set off against a homestead exemption to which he is entitled for the purpose of diminishing the latter.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668; Dec. Dig. § 396.*]

3. BANKRUPTCY (§ 399*)—EXEMPTIONS—GROUNDS FOR DISALLOWING.

That a bankrupt failed to schedule a life insurance policy is not ground for disallowing his exemptions, where the omission was without fraudulent intent, but through mistake, and there was no concealment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 657, 669; Dec. Dig. § 399.*]

4. BANKRUPTCY (§ 348*)—CLAIMS ENTITLED TO PRIORITY—WAGES.

An agreement by a merchant to pay his wife and adult daughter wages for managing his store during a time when he was ill in a hospital is valid, and they are entitled to the allowance of their wages earned within three months prior to his bankruptcy as preferred claims against his estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*]

5. EVIDENCE (§ 594*)—DEGREE OF PROOF—MAKING OF CONTRACT.

The uncontradicted testimony of both parties to the making of a parol contract between them cannot be ignored because not corroborated.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

In the matter of Aaron Strauch, bankrupt. On review of orders of referee. Reversed.

Edward Vollrath, of Bucyrus, Ohio, for petitioners.

R. V. Sears and A. S. Leuthold, both of Bucyrus, Ohio, for trustee.

KILLITS, District Judge. This matter is before the court on four petitions for review brought by the bankrupt's wife and daughter. In entering the orders complained of the referee has manifestly gone afar wrong.

[1] Touching the applications of Mrs. Strauch for allowance of dower and homestead, it appears that the real property of the bankrupt, being his home, was sold free of the contingent right of dower of Mrs. Strauch. Unless, therefore, something appears in the rec-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ord to prevent, Mrs. Strauch was clearly entitled to receive, from the trustee out of the proceeds of sale remaining after mortgage liens were satisfied, the value of her contingent right of dower, computed according to well-known methods. We are unable to find anything in this record to defeat her right of dower.

It is well established in this state that one enjoying a contingent right of dower, who joins in a mortgage of property involved to secure the debt of her spouse, releases dower only to the mortgagee and his assigns and is entitled to the value of the contingent right of dower computed upon the full value of the property, to be paid out of the surplus, if any, after the mortgage lien is satisfied.

The referee gives three reasons why in his judgment the claimant is not entitled to dower: (1) That she was barred by the compromise made with Albert G. Stoltz. (2) She was estopped by her conduct in assenting to the compromise. (3) That she cannot claim dower in said funds as against either the Second National Bank of Bucyrus or Stoltz.

The third position is undoubtedly valid. As against these parties who were mortgagees she has no right of dower for the reason that she signed the several mortgages, but that fact affords no reason why she should not have dower in the surplus remaining after these mortgage claims are satisfied. To understand the first two alleged reasons it must be explained that Stoltz was the mortgagee under an instrument which this court set aside as a preference. Pending appeal to the Circuit Court of Appeals, the trustee compromised with Stoltz and allowed him $300 on his mortgage claim of $1,500. How out of this circumstance the referee finds a bar or an estoppel against Mrs. Strauch passes the court's comprehension. The compromise was between the trustee and Stoltz. Under no circumstances could Mrs. Strauch's approval or assent, disapproval or dissent affect it. She was in no wise a party to it and in no wise could control it. The utmost interest she had in it was that to the extent Stoltz was allowed anything on his claim to that extent it might be that the surplus out of which her contingent dower should be paid might be reduced.

It appears that in making up the sum of $1,500, which Stoltz claimed was the consideration for the mortgage set aside, $376 were paid by him in cash to Mrs. Strauch. The facts indicate that Mrs. Strauch was her husband's agent in receiving this money, as they also suggest that the money was disbursed in the payment of household expenses and debts of Mr. Strauch. At the time Strauch was an invalid, and during his progress to health Mrs. Strauch was doing business for him. The referee affects to find in these circumstances a valid consideration moving from Stoltz to Mrs. Strauch for her dower interest. Assuming that to be the fact, it would in no wise affect the situation. Stoltz may have paid her actual cash to release her dower, and yet the release would be good only as to him and only affect the interest he had in the compromise and could not, even if upon the consideration passing from Stoltz, be permitted to operate to enlarge the rights of unsecured creditors. She would nevertheless be entitled to dower against all other creditors, to be paid out of the surplus.

844 208 FEDERAL REPORTER

If authority for the court's position is necessary, it may be found in the decision of the Circuit Court of Appeals of this circuit in the case of In re Lingafelter, 181 Fed. 24, 104 C. C. A. 38, 32 L. R. A. (N. S.) 103, 24 Am. Bankr. Rep. 656.

In his opinion the referee has also discovered an alleged estoppel in the fact that there was at some time some dispute over the description of the property conveyed by the Stoltz mortgage and contained in other conveyances. This homestead had been conveyed by the bankrupt to his wife. The trustee undertaking to recover it, Mrs. Strauch voluntarily conveyed it to the trustee with an express reservation in the deed that neither her dower nor homestead rights should be affected by the several transactions. For a while it was thought that in these conveyances part of the property was not covered by the description, and some confusion arose because of this misconception. It was afterwards cleared up, all the property passed out of Mrs. Strauch, and to predicate any estoppel against her because thereof is trivial indeed.

The order of the court as to this matter will be that the trustee compute the value of Mrs. Strauch's contingent right of dower upon the gross selling price of the property and pay that sum to her out of the surplus remaining after the payment of the bank's mortgage and the $300 to Stoltz and the costs of those transactions.

[2] Coming now to Mrs. Strauch's claim for homestead, we are referred to the fact that at the time the petition in bankruptcy was filed the homestead was in Mrs. Strauch's name, wherefore no demand was made for exemption in kind by the bankrupt, who did, however, claim his statutory exemptions.

The facts show that the household goods shown to be the property of the bankrupt were not equivalent in their cash value to the amount of specific exemptions allowed by the Ohio statutes. We have alluded to the fact that Mrs. Strauch, in deeding the homestead to the trustee, reserved her right of homestead exemption, for which she promptly made application; her husband not having done so. The situation is governed by section 11737, General Code of Ohio; the homestead having been sold to satisfy liens and not being divisible so that a specific portion could be set off. Five hundred dollars, consequently, out of the proceeds would be the amount to be awarded in lieu of a homestead.

The referee defeats Mrs. Strauch's claim in a curious way. He deducts from the $500 the value of the household furniture which he finds belonging to Mr. and Mrs. Strauch, including that which is covered by the bankrupt's specific exemptions. He also deducts the sum of $118, which represents Mrs. Strauch's labor claim for three months prior to the filing of the petition, on which the trustee had paid $100. Neither of these sums can be deducted from this claim, for the reason that neither of them are subject to levy. They are exempt from execution and attachment, and, being so exempt, they cannot be considered to be property or means the application of which may diminish a claim for homestead. One class of exemptions cannot be set off against another class for the purpose of diminishing the second class.

[3] Another reason for defeating this claim for homestead arose from the fact that an insurance policy which had a surrender value at the time of filing the petition of $194 had not been scheduled by the bankrupt. The circumstances indicate that the bankrupt in good faith assumed that this policy was the property of his wife, for which reason he did not schedule it. There is not the slightest ground—and the court has read every syllable of the testimony—to reflect upon the utmost good faith of the bankrupt in failing to schedule this policy. It has been a matter of difference of opinion until within a short time whether tontine policies are schedulable or not, and it may be easily understood how one not a lawyer familiar with the determination of the courts on this subject might assume from the language of his policy that the beneficiary of a surrender value was the beneficiary named in the policy. Neither Mr. nor Mrs. Strauch made any concealment of the fact; on the other hand, the fact was discovered by their own voluntary statement, and, in our judgment, the referee was harsh towards these people in undertaking to impose a penalty on Mr. Strauch and through him upon his wife for the failure to list this policy. They have accounted for the proceeds, $194. This sum of money unquestionably belonged to the bankrupt's estate. Having received it themselves, it should be accounted for by them. That may be done by deducting that sum from the homestead exemption of $500, allowing Mrs. Strauch the balance.

The trustee assumes to find support for his position with reference to the effect of the failure to list this policy upon the homestead right in the case of In re Sharr, 15 Am. Bankr. Rep. 491, decided by a referee of this district and affirmed without report by this court. The fact that this court affirms generally the conclusions of a referee does not by any means involve the approval by the court of the referee's reasoning, and In re Sharr, so far as an attempt may be made to cite it to support the referee's action in this case, is not an authority upon this court, and, in fact, in the particular in which it is cited, it is inconsistent with the case of In re Lingafelter, cited above, decided by our Circuit Court of Appeals. The facts in Re Sharr are so entirely different from the facts before us that the case has no application whatever. It was a case where the bankrupt was an absconder who never was served with summons on the filing of an involuntary petition.

It is the order of the court that the trustee will pay to Mrs. Strauch, in full liquidation of her homestead claims, out of the surplus in his hands arising from the sale of the real estate, the sum of $306, being the balance remaining after accounting for the proceeds of the Germania insurance policy.

[4] It appears from the testimony that at least during the later months of Mr. Strauch's business, while he was in the hospital and convalescing from a severe surgical operation, his store was managed by Mrs. Strauch and their grown daughter, Miriam. It also appears that a definite contract existed between Mr. Strauch and his wife and daughter that they were to receive as compensation the sums of $10 and $6 per week, respectively. On mere suspicion the referee disre-

gards this testimony, to which there is no contradiction, and therefore refuses to allow either of them their preferred claims for wages. Passing the point that these people may be considered to be operatives and hence entitled to preference for wages for a year preceding the bankruptcy, without further discussion than to suggest that we are not convinced by the facts that they should be so considered, it seems to us to be well established by the evidence, and entirely consistent with the fair and equitable administration of the bankruptcy law in this case, to allow these claims for the three months immediately preceding the filing of the petition, and the trustee will account to Miriam Strauch for the period in question at the rate of $6 per week and to Mrs. Strauch upon her claim for a like period at the rate of $10 per week.

[5] The referee, with a peculiar fancy, which has been manifest all through this case, disregards the claim of Miriam Strauch, for instance, because, as he says:

"There was a lack of corroboration of the testimony in behalf of Miriam Strauch and her father that there was a definite contract between them whereby Miriam was to receive for her work the sum of $6 per week for her services."

We are not aware that when testimony is as positive as this was its credibility is affected by the lack of corroboration. The referee was not justified in fancifully and arbitrarily disregarding it, nor was he entitled to consider the fact that this daughter, who was five or six years past her majority, had received favors from her parents in her immature years and when her father was in better financial circumstances. It would make no difference how kind and indulgent a father he had been to her at a time when such indulgence did not affect his creditors.